IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL BOWLING,** : | |
|     **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 23-CV-4897** |
| : | |
| **LEHIGH COUNTY,** *et al.* : | |
|     **Defendants.** : | |

## MEMORANDUM

**YOUNGE, J.**                                                                             **FEBRUARY 26, 2024**

Plaintiff Daniel Bowling, a prisoner currently incarcerated at Quehanna Boot Camp, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Bowling has also filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1) and Prisoner Trust Fund Account Statement (ECF No. 6). Because it appears that Bowling cannot afford to pre-pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Court will dismiss his Complaint in part with prejudice and in part without prejudice. Bowling will be given an opportunity to cure the noted deficiencies of certain claims by filing an amended complaint.

**I.**     **FACTUAL ALLEGATIONS**[1]

Bowling names as Defendants: (1) Lehigh County Entity - Board/Supervisors, (2) Lehigh County Prison Warden Kyle Russell, (3) County Prison Guard, Sergeant Gonzales, and (4) Correctional Officer Jordan. (Compl. (ECF No. 3) at 1.)[2] The Defendants are sued in their individual and official capacities. (*Id.*)

---

[1] The factual allegations are taken from Bowling's Complaint and the attachments thereto.

[2] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

Bowling avers that while he was incarcerated at Lehigh County Prison ("LCP") in June 2021, he was designated as "bottom bunk/tier status" by the prison medical staff for a pre-existing medical condition.[3] (*Id.* at 2.) Bowling avers that at some point following his "release from RHU," he was placed in a "top tier-top bunk status" but that situation was cleared up within two days because once "medical staff" informed the "correctional staff" of his "valid medical condition," he was moved to a "bottom tier-bottom bunk bed." (*Id.*)

In November 2021, after testing positive for Covid-19 and upon return to the cell block, Bowling was given a direct order to pack up and he was "physically handled . . . up a set of metal grate stairs to a cell" on the top tier and assigned a bottom bunk. (*Id.*) Bowling protested and "call[ed] attention to [his] existing bottom tier-bottom bunk status." (*Id.*) For approximately two weeks, "despite numerous letters to medical staff and various corrections departments," Bowling struggled with his prescribed cane to navigate the "twelve to fifteen steps" so that he could access the handicap shower and telephone. (*Id.*)

On December 8, 2021, while Bowling was returning to his cell and "making his way to the last top five steps," his cane caught in the grate of the stairs, and he fell backwards tumbling down to the bottom steps. (*Id.* at 3, 12.) Medical staff and a female corrections officer rushed to Bowling's aid, allegedly telling him, "get up, your [sic] fine," and brought him a wheelchair before placing him in an empty cell on an adjoining block. (*Id.* at 3.) Bowling was taken for x-rays the next day and "given the bottom tier-bottom bunk he should have had all along." (*Id.*) Bowling avers that as a result of his injuries from the fall, "he was routinely seen by medical who finally ordered M.R.I. along with numerous doctor visits and pain management recommendations." (*Id.*)

---

[3] Bowling does not identify his pre-existing medical condition in the Complaint.

Based on the foregoing allegations, Bowling contends that "DEFENDANTS IGNORED A MEDICAL DIRECTIVE . . . BY PLACING HIM ON A TOP TIER/MEZZANINE THAT COULD ONLY BE REACHED BY A SET OF STEPS, TWELVE HIGH. . . . [and] NO EXIGENCY EXISTED FOR THE CELL PLACEMENT." (*Id.* at 4.) He further avers that "DEFENDANTS ACTIONS EXHIBIT THE DELIBERATE INDIFFERENCE TO HIS MEDICAL CONDITION THAT PREVENTED SAFE NAVIGATION OF THE OBSTACLE COURSE TYPE CONDITION CREATED BY THE CELL ASSIGNMENT." (*Id.*) Bowling contends that Defendants violated his "EIGHTH AND FORTEENTH [sic] CONSTITUTIONAL RIGHTS." (*Id.*) As relief, Bowling requests a declaration that Defendants violated his constitutional rights, and he seeks more than $500,000 in monetary damages. (*Id.* at 5.)

## II.  STANDARD OF REVIEW

The Court will grant Bowling leave to proceed *in forma pauperis* because it appears that he is incapable of pre-paying the fees to commence this civil action.[4] Since Bowling is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted), *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

---

[4] However, as Bowling is currently incarcerated, he will be obligated to pay the full amount of the filing fee in installments as required by the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Bowling is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

### III.  DISCUSSION

As noted above, the Complaint reflects Bowling's intention to raise civil rights claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In addition, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement

4

requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### A. Claims Against the Lehigh County Entity Board/Supervisors

Bowling names the Lehigh County Entity Board/Supervisors as a Defendant. However, he fails to explain how this Defendant was involved in the alleged violations of his rights or legally responsible for any harm he sustained. Although it is not clear from his Complaint, Bowling may intend to assert a claim against Lehigh County because it operates the Lehigh County Prison by virtue of its appointment and confirmation of the Director of Corrections. *See* https://www.lehighcounty.org/Departments/Corrections (last viewed 2/22/2024).[5]

To plead a basis for liability against a municipal entity under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-

---

[5] The Court may take judicial notice of the information published on a government website. *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017) ("To the extent that we rely on information beyond what the government included in its amicus brief, that information is publicly available on government websites and therefore we take judicial notice of it.").

settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). In addition, "[a] plaintiff must also allege that the policy or custom was the "proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Bowling makes no allegations regarding a specific custom or policy by which municipal liability claims may be maintained, and he fails to allege that any policy or custom of the county caused the constitutional violations he describes in his Complaint. Accordingly, Bowling has failed to articulate a plausible municipal liability claim, and any claims he seeks to assert against Lehigh County will be dismissed without prejudice on screening. If Bowling believes he can allege a municipal liability claim against a proper municipal party, he may amend his Complaint to cure the defects the Court has identified.

    **B.    Claims Against the Individual Defendants**

The Complaint also fails to state a claim against Kyle Russell, Sergeant Gonzales, and Correctional Officer Jordan because it does not allege any facts explaining how these individuals were personally involved in the alleged violations of Bowling's rights or how they otherwise

caused him harm.[6] As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207; *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Absent specific allegations about what each of these individuals did or did not do to violate Bowling's rights or cause him harm, Bowling cannot state a plausible claim against them.

Throughout his Complaint, Bowling has collectively referred to the conduct of prison officials, medical staff, or correctional officers without specifying what each of the particular named Defendants did or did not do that violated his rights. (Compl. at 2-4.) Pleading in such a manner, especially where there are multiple events and defendants at issue, is insufficient to put the Defendants on notice of the conduct with which they are charged and does not state a plausible claim. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"); *see also Dooley*, 957 F.3d at 374. Furthermore, Bowling's conclusory assertions that Defendants are liable to him or generally

---

[6] To the extent Bowling seeks to pursue claims against the individual Defendants in their official capacities (*see* Compl. at 1), any such claims are dismissed as duplicative of the claims against Lehigh County. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

violated his rights by, for example, "ignor[ing] a medical directive," is insufficient to state a claim.  *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).  Accordingly, the claims against these Defendants will be dismissed without prejudice.  Although the failure to allege personal involvement is sufficient on its own to dismiss Bowling's claims against these Defendants, the Court will address additional defects in the claims below.

### 1. Specific Claims as to Warden Russell

To the extent that Bowling seeks to bring a claim against Russell because he holds a supervisory position, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Barkes*, 766 F.3d at 316.

Bowling has failed to allege that Russell established and maintained a policy, practice or custom with deliberate indifference that caused constitutional harm, and he has failed to allege Russell's personal involvement in any alleged underlying constitutional violation.  Accordingly,

any claims against Defendant Russell are not plausible and will be dismissed without prejudice.[7] *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (explaining that a warden or director cannot be held liable "simply because of his position as the head of the [agency]") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)); *see also Ogrod v. City of Philadelphia*, No. 21-2499, 2022 WL 1093128, at *14 (E.D. Pa. Apr. 12, 2022) (finding plaintiff, who only alleged that supervisor-defendant was a Lieutenant in the Special Investigations Unit and that other defendants reported to him, failed to support a plausible claim for supervisory liability); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").

### 2. Deliberate Indifference to Medical Needs

Bowling asserts claims for deliberate indifference to his medical needs. To state a constitutional claim in this context, a prisoner must allege facts indicating that prison officials

---

[7] To the extent that Bowling's claims against Russell are based on Russell's participation in the grievance process (*see* Compl. at 3, 5, 8), the claims are also not plausible. Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))). A prison official's involvement in the grievance process, alone, is thus not actionable under § 1983. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").

were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal citations and quotations omitted).

Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id; see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a

non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236.  Furthermore, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*).

Again, Bowling's claims fail as pled because he does not allege how any of the named Defendants were personally involved in the alleged violation of his rights.  Moreover, there simply are not enough facts in the Complaint to support a plausible inference that any of the named Defendants were aware that Bowling required a bottom bunk assignment or attention for a serious medical need and that they acted intentionally to refuse to provide medical treatment, delayed treatment, or personally prevented Bowling from receiving needed or recommended medical treatment.  Accordingly, Bowling has not stated a plausible claim for deliberate indifference.

**C.    Declaratory Relief**

In addition to money damages, Bowling seeks a declaration that his constitutional rights have been violated.  (Compl. at 5.)  Because declaratory relief is unavailable to adjudicate past conduct, Bowling's request for declaratory relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, 855 F. App'x 812, 815 (3d Cir. 2021) (*per curiam*) ("A declaratory

judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Bowling leave to proceed *in forma pauperis* and dismiss his Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Bowling's claims seeking declaratory relief will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they are not plausible. Further, the Court concludes that amendment of these claims would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints with leave to amend "unless amendment would be inequitable or futile.").

Because the Court cannot say at this time that Bowling cannot cure the defects in his remaining claims, those claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Bowling will be granted the option of filing an amended complaint. Any amended complaint must clearly describe the factual basis for Bowling's claims against the relevant defendants and how each defendant was personally involved in the alleged denial of his constitutional rights. An appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:

/s/ John Milton Younge
_____
**JOHN M. YOUNGE, J.**