IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL BOWLING,<br>　　Plaintiff,<br><br>　　v.<br><br>LEHIGH COUNTY, *et al.*<br>　　Defendants. | :<br>:<br>:<br>:  CIVIL ACTION NO. 23-CV-4897<br>:<br>:<br>: |

**MEMORANDUM**

**YOUNGE, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**JUNE 28th, 2024**

　　Currently before the Court is an Amended Complaint filed by Daniel Bowling pursuant to 42 U.S.C. § 1983 against Correctional Officer Jordan, Sergeant Gonzales, Warden Kyle Russell, and the "Lehigh County Entity-Board/Supervisors," in which Bowling raises claims of deliberate indifference to his serious mental health needs based on events that occurred during his prior incarceration at the Lehigh County Prison ("LCP"). (ECF No. 12.) For the following reasons, the Court will direct service of Bowling's claims against Correctional Officer Jordan and Sergeant Gonzales. Bowling's claims against the remaining Defendants will be dismissed with prejudice.

**I.　FACTUAL ALLEGATIONS**[1]

　　Bowling's initial Complaint in this case named the following Defendants in their individual and official capacities: (1) Lehigh County Entity - Board/Supervisors, (2) Lehigh County Prison Warden Kyle Russell, (3) County Prison Guard, Sergeant Gonzales, and (4)

---

[1] The factual allegations are taken from Bowling's Complaint, his Amended Complaint, and the attachments thereto.

Correctional Officer Jordan. (Compl. (ECF No. 3) at 1.)[2] Bowling averred that he was subjected to deliberate indifference when he was placed on a top tier despite being designated as "bottom bunk/tier status" by the prison medical staff for a pre-existing medical condition. (*Id.* at 2.) On December 8, 2021, when Bowling was returning to his cell on the top tier and "making his way to the last top five steps," his cane caught in the grate of the stairs, and he fell backwards tumbling down to the bottom steps. (*Id.* at 3, 12.)

In a February 26, 2024 Memorandum and Order, the Court granted Bowling leave to proceed *in forma pauperis* and screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). (ECF Nos. 7 & 8.) The Court dismissed with prejudice Bowling's claim seeking a declaration that his constitutional rights had been violated because declaratory relief is unavailable to adjudicate past conduct. *See Bowling v. Lehigh Cnty.*, No. 23-4897, 2024 WL 776691, at *6 (E.D. Pa. Feb. 26, 2024). Bowling's remaining claims, including his municipal liability claim brought against Lehigh County,[3] his supervisory liability and individual capacity claims against Warden Russell, and his claims against CO Jordan and Sergeant Gonzales in their individual and official capacities, were dismissed without prejudice.[4] *Id.* at *3-*6.

---

[2] The Court adopts the pagination assigned to the Complaint and the Amended Complaint by the CM/ECF system.

[3] In his initial Complaint, Bowling named the Lehigh County Entity Board/Supervisors as a Defendant, but he did not explain how this Defendant was involved in the alleged violations of his rights or legally responsible for any harm he sustained. *Bowling*, 2024 WL 776691, at *3. The Court liberally construed Bowling's allegations against this Defendant as asserting a municipal liability claim against Lehigh County because the County operates the Lehigh County Prison by virtue of its appointment and confirmation of the Director of Corrections. *Id.*

[4] The individual capacity claims against Warden Russell, CO Jordan, and Sergeant Gonzales were dismissed without prejudice because Bowling failed to allege any facts explaining how these individuals were personally involved in an alleged violation of his rights or how they otherwise caused him harm. *Bowling*, 2024 WL 776691, at *4-*6.

The Court gave Bowling an opportunity to file an amended complaint, which he did.  The Amended Complaint asserts deliberate indifference claims against CO Jordan, Sergeant Gonzales, and Warden Russell in their individual capacities only, and it reiterates a municipal liability claim against the "Lehigh County Entity – Board/Supervisors."  (Am. Compl. (ECF No. 12) at 2-3.)  As with his initial Complaint, Bowling alleges that the events giving rise to his claims occurred on December 8, 2021 at LCP.  (*Id.* at 4.)

Bowling avers that a history of accidents has caused him limited mobility and an inability to walk unassisted.  (*Id.* at 12, 20.)  He suffers from sciatica, fibromyalgia, and chronic pain because of nerve damage and herniated discs in his thoracic and lumbar spine.  (*Id.*)  Bowling asserts that his conditions are well documented, and he "made the medical department completely aware of all these conditions and all of [his] medical needs upon [his] initial intake" into LCP in 2021.  (*Id.*)  Sometime on or about June 10, 2021, Bowling was "seen by medical" and supplied with a cane on account of his disabilities.  (*Id.* at 13.)  Bowling was also designated at that time as "bottom bunk/bottom tier status" by the prison medical department.  (*Id.* at 14.)

In November 2021, Bowling tested positive for COVID-19 and was advised that he would be moved to a different housing unit to be quarantined.  (*Id.*)  When CO Jordan arrived to escort him, Bowling reminded Jordan that he "had bottom tier/bunk status."  (*Id.*)  Jordan responded that he was aware of Bowling's status.  (*Id.*)  However, when Bowling arrived at the quarantine block, he was met by Sergeant Gonzales who informed him that he would be housed in a cell on the second tier, which would require him to navigate twelve to fifteen metal grated stairs with his cane.  (*Id.* at 15.)  As Gonzales and Jordan began to escort him up the stairs, Bowling protested, stating that he "was still suffering from existing medical conditions, in severe pain, unable to navigate stairs or top bunks and also that the bottom tier-bunk medical order was

still in effect." (*Id.*)  Bowling also "point[ed] to [his] cane as obvious evidence of this fact." (*Id.*)  Gonzales informed Bowling that she was "well aware of [his] medical order" and that if he refused to obey "her direct order to go up the stairs," he would be given a misconduct and "sent to the hole." (*Id.*)  Bowling reluctantly followed her order even though it was "an obvious contradiction to an existing medical order for bottom tier/bunk status." (*Id.* at 15-16.)

For several days thereafter, Bowling was forced to maneuver his way up and down the stairs any time he needed to access anything on the bottom tier, including the telephone and handicap shower.  (*Id.* at 16.)  Bowling was repeatedly denied assistance, and he asserts that he was in obvious pain and discomfort each time he had to use the stairs.  (*Id.*)  He spoke to numerous sergeants and "medical" about this situation and "even wrote a request to the warden," but he was constantly ignored.  (*Id.*)

On December 8, 2021, Bowling received a notification that he was permitted to use the phone and the shower.  (*Id.*)  He requested an escort to the bottom tier but was told "to figure it out" or "don't come out of [his] cell."  (*Id.* at 16-17.)  When Bowling was making his way back up the stairs after using the telephone, his cane got "caught in the stairs" and he lost his balance, "tumbled backwards and fell down the stairs hitting [his] head hard on the wall."  (*Id.* at 17.)  After the fall, Bowling felt excruciating pain and had trouble getting up and moving.  (*Id.* at 17-18.)  He was taken by wheelchair to a medical observation cell on the bottom tier and was kept on the bottom tier until he was released from quarantine.  (*Id.* at 17.)

Bowling contends that "Warden Russell's personal involvement stems from his duty to the emergency code invoked by Govener [sic] Wolf and the extraordinary circumstances within the institution under his control."  (*Id.* at 23.)  He further asserts that "there was no policy in place that dealt with exsisting [sic] medical conditions compounded by a positive COVID-19

test." (*Id.* at 24.)  Bowling contends that his requests to Russell were ignored, and Russell was deliberately indifferent as a result.  (*Id.* at 23-24.)  Bowling further avers that Gonzales's decision to disregard an existing medical order and place him in a top tier housing cell "effectively instituted and carried out policy with explicit approval of Russell."  (*Id.* at 24.)

Bowling avers his prior existing injuries were aggravated because of the fall, and his pain level is substantially worse.  (*Id.* at 5, 20.)  He has increased mobility issues and cannot complete normal everyday tasks without experiencing severe pain and discomfort.  (*Id.*)  Bowling also asserts that he is suffering with anxiety and depression because of constant pain.  (*Id.*)  He seeks $500,000 in monetary damages.  (*Id.* at 5.)

II.     **STANDARD OF REVIEW**

As Bowling is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Bowling is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185

(3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.  DISCUSSION

Bowling again asserts claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 does not permit recovery for vicarious theories of liability, and liability cannot be predicated solely on the operation of *respondeat superior*.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  This means superior officers may not be held liable for civil rights violations based entirely on acts taken by their subordinate officers.  Because the personal involvement of each defendant in the alleged constitutional violation is a required element in a § 1983 action, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *Id.*  For the reasons that follow, the Court concludes that the only claims presented by Bowling's Amended Complaint that pass statutory screening at this time are his claims of deliberate indifference against CO Jordan and Sergeant Gonzales.

#### A.  Claims Against Correctional Officer Jordan and Sergeant Gonzales

Bowling reasserts his claims for deliberate indifference against Defendants CO Jordan and Sergeant Gonzales.  The deliberate indifference claims asserted in Bowling's initial Complaint against these Defendants were dismissed as undeveloped because Bowling failed to allege sufficient facts explaining how either CO Jordan or Sergeant Gonzales were personally involved in the alleged violations of his rights or how they otherwise caused him harm.  *See Bowling*, 2024 WL 776691, at *4 ("Absent specific allegations about what each of these

individuals did or did not do to violate Bowling's rights or cause him harm, Bowling cannot state a plausible claim against them.")  To state a constitutional claim in this context, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal citations and quotations omitted).

Bowling alleges that CO Jordan and Sergeant Gonzales were "well aware" of his medical conditions that caused him severe pain and limited mobility, his prescribed "bottom tier/bunk status," and his reliance on a cane for mobility, but they nevertheless housed him in a cell on the second tier, requiring him to navigate up twelve to fifteen metal grated stairs.  At this stage of the case, Bowling has alleged sufficient facts to state plausible deliberate indifference claims against CO Jordan and Sergeant Gonzales.  These claims will proceed to service.

    **B.**   **Claims Against the Lehigh County Entity Board/Supervisors**

Bowling renames the Lehigh County Entity Board/Supervisors ("Board") as a Defendant in its official capacity.  However, there are no specific allegations asserted against the Board anywhere in the Amended Complaint, and Bowling again fails to explain how the Board was involved in the alleged violations of his rights or how it was legally responsible for any harm he sustained.  Although the failure to allege personal involvement is sufficient on its own to dismiss

Bowling's claims against the Board, as noted in the Court's prior Memorandum, Bowling may intend to assert a municipal liability claim against Lehigh County because it operates LCP by virtue of its appointment and confirmation of the Director of Corrections. *See Bowling*, 2024 WL 776691, at *3 (citing https://www.lehighcounty.org/Departments/Corrections).

As previously noted, to plead a basis for liability against a municipal entity under § 1983, Bowling must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Bowling*, 2024 WL 776691, at *3 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). It is not enough, however, to allege the existence of a policy or a custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*. (*citing Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id*. (quoting *Bielevicz*, 915 F.2d at 850).

In addition, a *Monell* claim may not be based on allegations that simply paraphrase the standard for municipal liability. Such allegations are too vague and generalized to support a plausible *Monell* claim. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under Monell"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018).

Bowling's *Monell* claim is based on allegations that are vague, generalized, and conclusory. In fact, he alleges that "no policy" was in place to address "exsisting [sic] medical conditions compounded by a positive COVID-19 test." (Am. Compl. at 24.) The Court understands Bowling to assert that because he was placed in a top tier cell during quarantine without regard to his existing medical conditions and bottom tier cell assignment, it was the County's custom to ignore existing medical conditions when an inmate tested positive for COVID-19. There is no allegation, however, that the County's conduct was so well-settled and permanent as to constitute a plausible custom. Bowling's assertion that there was a lack of policy leading to him being placed in a top tier cell appears limited to his own experience. He does not allege that any similar instances occurred with other inmates at LCP. Bowling's conclusory allegations are thus insufficient to state a plausible *Monell* claim. *See Phillips v. Northampton Co., P.A.*, 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*) (affirming dismissal of *Monell* claim and concluding that "[o]ther than some wholly conclusory and highly generalized assertions about unspecified patterns of misconduct, Phillips pleaded no facts to support the existence of any policy, custom, or practice beyond those involving his own arrests, convictions, and confinement"); *see also Coyle v. Montgomery Cnty., Pennsylvania*, No. 21-

4704, 2023 WL 2576843, at *18 (E.D. Pa. Mar. 20, 2023) (prisoner "manufactur[ed] claims about a lack of policies or lack of training" with respect to recording and maintaining medical slips based only on what happened to him).  Accordingly, Bowling has failed to articulate a plausible municipal liability claim, and any claims he seeks to assert against Lehigh County will be dismissed.

### C. Claims Against Kyle Russell

Bowling asserts a deliberate indifference claim against Warden Russell in his individual capacity, alleging that Russell ignored his request for assignment to a bottom tier cell during his time in quarantine.  (Am. Compl. at 16.)  He further contends "Warden Russell's personal involvement stems from his duty to the emergency code invoked by Govener [sic] Wolf and the extraordinary circumstances within the institution under his control."  (*Id.* at 23.)

As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983.  *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020); *see also Bowling*, 2024 WL 776691, at *4 (explaining to Bowling the standards for supervisory liability).

Bowling avers that he wrote to Russell concerning his request for a bottom tier cell assignment, but his request was ignored. (Am. Compl. at 16, 26-27.) To the extent that Bowling's claims against Russell are based on Russell's participation in the grievance process, the claims are not plausible. Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))). A prison official's involvement in the grievance process, alone, is thus not actionable under § 1983. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").

Nor has Bowling alleged a basis for supervisory liability against Russell. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *See Bowling*, 2024 WL 776691, at *4 (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S.

822 (2015)). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr*., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Bowling alleges that Russell was personally involved by virtue of his "control" over LCP. (Am. Compl. at 23.) This allegation does not support a plausible supervisory claim against Russell. As with his initial Complaint, Bowling has failed to allege that Russell established and maintained a policy, practice or custom with deliberate indifference that caused constitutional harm, and he has failed to allege Russell's personal involvement in any alleged underlying constitutional violation. Accordingly, any claims against Warden Russell are not plausible and will be dismissed. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (explaining that a warden or director cannot be held liable "simply because of his position as the head of the [agency]") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)); *see also Ogrod v. City of Philadelphia*, No. 21-2499, 2022 WL 1093128, at *14 (E.D. Pa. Apr. 12, 2022) (finding plaintiff, who only alleged that supervisor-defendant was a Lieutenant in the Special Investigations Unit and that other defendants reported to him, failed to support a plausible claim for supervisory liability); *Zigler v. Warren*, No. 21-19474, 2022 WL

903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").

IV. **CONCLUSION**

For the foregoing reasons, the Court will dismiss Bowling's Amended Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. His deliberate indifference claims against CO Jordan and Sergeant Gonzales pass statutory screening and will proceed to service. Bowling's municipal liability claim and his individual capacity claims against Warden Russell will be dismissed with prejudice because the Court concludes that further attempts at amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se prisoner would be futile when prisoner "already had two chances to tell his story"). An appropriate Order follows, which directs service of Bowling's deliberate indifference claims against Correctional Officer Jordan and Sergeant Gonzales.

                                                  **BY THE COURT:**

                                                  __/s/ John Milton Younge__
                                                  **JOHN M. YOUNGE, J.**